UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10409-RWZ

JOSHUA B.P. MARTIN

v.

TD BANK, N.A. and INFINITY MORTGAGE CO.

MEMORANDUM OF DECISION

April 27, 2011

**ZOBEL, D.J.**

Plaintiff Joshua Martin brought this action against the bank that serviced his mortgage, T.D. Bank, N.A. ("T.D. Bank") and the original mortgagee, Infinity Mortgage Co. ("Infinity Mortgage" or "Infinity"), alleging that the loan documentation for his mortgage violated several consumer protection statutes, including the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA"), the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692(a) et seq., along with state statutes Mass. Gen. Laws ch. 93A §§ 9, 49 and 140D § 1.

Defendant T.D. Bank moved for summary judgment on the ground that Martin had earlier signed a stipulation releasing any claims against the Bank, which was allowed. (Docket # 38.) Infinity Mortgage failed to answer the complaint, and plaintiff's motion for default judgment against it was allowed, subject to an assessment of damages. (Endorsed Order, 8/11/2010.) An evidentiary hearing regarding damages was held on April 21.

Martin seeks damages against Infinity under Counts I and III of the Verified Complaint, which respectively allege violations of TILA and Mass. Gen. Laws ch. 93A. The conduct that gave rise to the violation was Infinity's failure to disclose adequately and timely the loan terms to the borrower. Id., § 1631. Martin testified that he initially received a disclosure statement from his broker which set forth a loan of $201,218.85 at a fixed interest rate of 8.5%. See Docket # 6-1, Verified Complaint, Ex. C (TILA Disclosure Statement dated December 21, 2000). At the closing, however, and without counsel, he signed a TILA disclosure statement containing entirely different terms -- a loan of $200,467.96, with variable APR of 9.083%. Id., Ex. A (TILA Disclosure Statement dated January 16, 2001). On that same day, Martin executed a Fixed/Adjustable Rate Note in the amount of $204,250.00, with an interest rate of 8.5% at the closing. See Docket # 17-1, Ex. B. He also executed a rider which permitted a variable APR. See id.

Under the TILA, failure to properly disclose the loan terms gives rise to statutory damages, actual damages, and attorney's fees. Id. § 1640(a)(3). The regulations promulgated under the statute require that disclosures be made three days prior to consummation of the mortgage transaction. See 12 C.F.R. § 226.31(c). Here, Martin was given a disclosure statement in December 2000 which contained certain terms, and on January 16, 2011, the day of the closing, was given a new disclosure statement which contained significantly different terms. This is a violation of the TILA.

The court awards statutory damages pursuant to 15 U.S.C. § 1640(a)(2)(iv) in the amount of $4,000.

2

Martin's actual damages are the difference in the amount he agreed to pay under the December 2010 payment schedule (which reflected a fixed 8.5% APR interest rate) and the amount he actually paid. Under the original schedule, Martin was to make 36 payments of $1,570.51; 321 payments of $1,553.39; and a final payment of $1,559.08.[1] Had Martin received the benefit of the original agreement, he would have paid $1,570.51 between March 2001 and February 2004 (for a total of $56,538.36, or $1,570.51 for 36 months), and $1,553.39 between March 2004 and February 2007[2] (for a total of $55,922.04, or $1,553.39 for 36 months), for a total of $112,460.40.

In fact, he appears to have paid $132,554.64 in the form of monthly payments of $1,799.39 between March 2001 and February 2006 (for a total of $107,963.40, or $1,799.39 for 60 months), and monthly payments of $2,049.27 per month between March 2006 and February 2007 (for a total of $24,591.24, or $2,049.27 for 12 months).[3]

---

[1] Under the revised schedule, he was to make an initial 26 payments of $1,720.29, and 84 payments of $1,669.17; 37 payments of $1,553.43; an additional 202 payments of $1,519.39; and a final payment of $1,518.05. See TILA Disclosure Statement dated January 16, 2001. While unclear from the record, it appears that the variable interest rate may have changed at some point after he commenced payments, further revising the payment schedule.

[2] As discussed below, the court credits Martin with payments through February 2007.

[3] Martin testified during the hearing that he made monthly payments of $1,799.39 between February 2001 and December 2003 and $2,049.27 per month between January 2004 and some time in 2008. However, the bank records contained in the record appear to reflect a different payment schedule. First, the record appears to reflect monthly payments of $1,799.39 through February 2006, not 2003. See Docket # 30, T.D. Bank's Opp. to Martin's Cross-Motion for Summ. Judg., Ex. CC (TD BankNorth Martin Account History dated May, 23, 2007). Second, the record only reflects payments through February 6, 2007. See id.; see also Docket # 19, T.D. Bank's Statement of Material Facts at ¶ 30. Accordingly, the court credits Martin with

3

Thus, Martin's actual damages were $20,094.24, which represents $8,239.68 from March 2001 through February 2004 (or an overpayment of $228.88 for each of 36 months); $5,904 from March 2004 through February 2006 (or an overpayment of $246 for each of 24 months); and $5,950.56 from March 2006 through February 2007 (or an overpayment of $495.88 for each of 12 months).

Martin is separately entitled to damages under Mass. Gen. Laws ch. 93A, which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Regulations promulgated pursuant to that statute provide that violations of "Federal consumer protection statutes," such as TILA, constitute per se violations of ch. 93A § 2(a). See, e.g., Fidler v. Cent. Coop. Bank (In re Fidler), 210 B.R. 411, 430 (Bankr. D. Mass.1997) (stating that, pursuant to 940 C.M.R. 3.16(4), a violation of TILA constitutes a per se violation of Mass. Gen. Laws ch. 93A § 2). Under ch. 93A § 9(3A), the court trebles the award of actual damages.

Finally, plaintiff's counsel has submitted a summary of his fees, including hours worked and rate per hour in this case. However, much of counsel's time was spent trying to keep T.D. Bank in the case, after three courts had already determined that Martin's claim was meritless. Accordingly, counsel's fees are reduced to reflect only his time on this part of the case. This court awards attorney's fees in the amount of $12,580 in fees and $380 in costs.

Against Infinity, Martin is awarded $4,000 in statutory damages, $60,282.72 in actual damages, and $12,960 in attorney's fees and costs.

Judgment shall enter for Martin against Infinity in the total amount of $77,242.72.

---

payments through February 6, 2007.

4

| April 27, 2011 | /s/Rya W. Zobel |
| :---: | :---: |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |